IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| RONALD C.,[1] | ) |
| | ) |
| Plaintiff, | ) |
| | ) No. 18 C 07453 |
| v. | ) |
| | ) Magistrate Judge Beth W. Jantz |
| KILOLO KIJAKAZI, Acting | ) |
| Commissioner of Social Security,[2] | ) |
| | ) |
| Defendant. | ) |
| | ) |

**MEMORANDUM OPINION AND ORDER**

This action was brought under 42 U.S.C. § 405(g) to review the final decision of the Commissioner of Social Security denying Plaintiff Ronald C.'s application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). The parties have consented to the jurisdiction of the United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). For the reasons that follow, Plaintiff's motion for summary judgment [Dkt. 27, Pl.'s Mot.] is granted, and the Commissioner's cross-motion for summary judgment [Dkt. 37, Def.'s Mot.] is denied.

---

[1] In accordance with Internal Operating Procedure 22, Privacy in Social Security Opinions, the Court refers to Plaintiff by his first name and the first initial of his last name.

[2] Pursuant to Federal Rule of Civil Procedure 25(d), Commissioner Kilolo Kijakazi has been substituted for her predecessor.

**BACKGROUND**

I. **Procedural History**

On April 28, 2016, Plaintiff filed a claim for DIB and SSI, alleging disability since October 31, 2015 due to coronary artery disease and ulcers. [Dkt. 11-4, R. at 67.] Plaintiff's claim was denied initially and upon reconsideration, after which he timely requested a hearing before an Administrative Law Judge ("ALJ"), which was held on January 3, 2018. [R. 46.] Plaintiff personally appeared and testified at the hearing and was represented by counsel. [R. 49-50.] Vocational expert ("VE") Susan Ettinberg also testified. [R. 62.] On February 28, 2018, the ALJ denied Plaintiff's claim for benefits, finding her not disabled under the Social Security Act. [R. 82.] The Social Security Administration Appeals Council then denied Plaintiff's request for review, leaving the ALJ's decision as the final decision of the Commissioner and, therefore, reviewable by the District Court under 42 U.S.C. § 405(g). *Cullinan v. Berryhill*, 878 F.3d 598, 603 (7th Cir. 2017).

II. **The ALJ's Decision**

The ALJ analyzed Plaintiff's claim in accordance with the Social Security Administration's five-step sequential evaluation process. [R. 86.] The ALJ found at step one that Plaintiff had not engaged in substantial gainful activity since his alleged onset date of October 31, 2015. [R. 87.] At step two, the ALJ concluded that Plaintiff had the following severe impairment: coronary artery disease. [R. 87.] The ALJ concluded at step three that his impairment did not meet or medically equal one of the Social Security Administration's listings of impairments (a "Listing"). [R. 88.] Before step four, the ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to perform medium work, except that Plaintiff must avoid concentrated exposure to hazards such as machinery with moving mechanical parts and unprotected heights. [R. 88.] At

step four, the ALJ concluded that Plaintiff would be unable to perform his past relevant work as a truck driver. [R. 90-91.] At step five, based upon the VE's testimony and Plaintiff's age, education, work experience and RFC, the ALJ concluded that Plaintiff could perform jobs existing in significant numbers in the national economy, leading to a finding that he is not disabled under the Social Security Act. [R. 91-92.]

## DISCUSSION

### I. Judicial Review

Under the Social Security Act, a person is disabled if he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To determine disability within the meaning of the Social Security Act, the ALJ conducts a five-step inquiry, asking whether: (1) the claimant has performed any substantial gainful activity during the period for which she claims disability; (2) the claimant has a severe impairment or combination of impairments; (3) the claimant's impairment meets or equals any listed impairment; (4) the claimant retains the RFC to perform her past relevant work; and (5) the claimant is able to perform any other work existing in significant numbers in the national economy. 20 C.F.R. § 416.920(a). "A finding of disability requires an affirmative answer at either step three or step five." *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 352 (7th Cir. 2005). "The claimant bears the burden of proof at steps one through four, after which at step five the burden shifts to the Commissioner." *Id.*

Judicial review of the ALJ's decision is limited to determining whether it adequately discusses the issues and is based upon substantial evidence and the proper legal criteria. *Villano*

3

*v. Astrue*, 556 F.3d 558, 561-62 (7th Cir. 2009). "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal quotation omitted). "To determine whether substantial evidence exists, the court reviews the record as a whole but does not attempt to substitute its judgment for the ALJ's by reweighing the evidence, resolving material conflicts, or reconsidering facts or the credibility of witnesses." *Beardsley v. Colvin*, 758 F.3d 834, 836-37 (7th Cir. 2014). While this review is deferential, "it is not intended to be a rubber-stamp" on the ALJ's decision. *Stephens v. Berryhill*, 888 F.3d 323, 327 (7th Cir. 2018). The Court will reverse the ALJ's finding "if it is not supported by substantial evidence or if it is the result of an error of law." *Id.*, at 327.

The ALJ also has a basic obligation to develop a full and fair record, and to "build an accurate and logical bridge between the evidence and the result to afford the claimant meaningful judicial review of the administrative findings." *Beardsley*, 758 F.3d at 837. Although the ALJ is not required to mention every piece of evidence in the record, the ALJ's analysis "must provide some glimpse into the reasoning behind her decision to deny benefits." *Zurawski v. Halter*, 245 F.3d 881, 889 (7th Cir. 2001); *accord Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008). The ALJ "must explain [the ALJ's] analysis of the evidence with enough detail and clarity to permit meaningful appellate review." *Scrogham v. Colvin*, 765 F.3d 685, 695 (7th Cir. 2014) (quoting *Briscoe*, 425 F.3d at 351).

**II.     Analysis**

Plaintiff, who is *pro se* on appeal, makes a number of arguments challenging the ALJ's decision, including: (1) the ALJ erroneously discounted Plaintiff's subjective account of his symptoms; (2) the ALJ erred by erroneously discounting the opinions of Plaintiff's treating physician, Dr. Andrey Lev-Weissberg; and (3) the ALJ misclassified Plaintiff's prior work. After

4

reviewing the record and the briefs submitted by the parties, this Court concludes that the ALJ failed to consider the required factors in assigning little weight to Dr. Lev-Weissberg's opinions. Because this failure alone warrants remand, the Court does not reach Plaintiff's additional arguments.

Plaintiff argues that the ALJ erred in assigning little weight to the opinions of his treating physician, Dr. Andrey Lev-Weissberg. [Dkt. 27 at 1.] A treating physician's opinion on the nature and severity of a medical condition is entitled to controlling weight if it is "well-supported" by medical findings and "not inconsistent with the other substantial evidence" in the record.[3] 20 C.F.R. § 404.1527(c); *see Gerstner v. Berryhill*, 879 F.3d 257, 261 (7th Cir. 2018). If a treating physician's opinion is not given controlling weight, the ALJ must determine what weight it merits by considering the following factors: (1) the length, nature, and extent of the treatment relationship; (2) the frequency of examination; (3) the physician's specialty; and (4) the consistency and supportability of the opinion. 20 C.F.R. § 404.1527(c); *Gerstner*, 879 F.3d at 263. The ALJ "must offer good reasons for discounting the opinion of a treating physician." *Scott v. Astrue*, 647 F.3d 734, 739 (7th Cir. 2011) (internal quotation omitted).

At various times in 2016 and 2017, Dr. Lev-Weissberg opined on Plaintiff's functional limitations. In March 2016, Dr. Lev-Weissberg noted that Plaintiff suffered from fatigue and dizziness, among other side effects of Plaintiff's medications. [R. 295]. Dr. Lev-Weissberg indicated that Plaintiff could not walk one block or more on rough or uneven ground and could not climb steps without use of a handrail at a reasonable pace. [R. 296]. Dr. Lev-Weissberg further

---

[3] The "treating physician rule" has been rescinded for claims filed after March 27, 2017 "to eliminate the 'controlling weight' instruction." *Kaminski v. Berryhill*, 894 F.3d 870, 874, n.1 (7th Cir. 2018) (comparing 20 C.F.R. § 404.1527(c) (for claims filed before March 27, 2017), with 20 C.F.R. § 404.1527(c) (for claims filed on or after March 27, 2017)).

5

noted that Plaintiff must lie down due to fatigue for about an hour of an 8-hour workday, that Plaintiff could stand or walk for only 3 hours of an 8-hour workday, and that Plaintiff could only sit for three hours at a time, walk for 30 minutes at a time, and stand for 1 hour at a time. [R. 296-97.] Dr. Lev-Weissberg went on to opine that Plaintiff could never carry 20 pounds or more, could occasionally carry 15 pounds, could frequently carry 10 pounds, and could constantly carry less than 5 pounds. [R. 297.]

In June 2017, Plaintiff reported to Dr. Lev-Weissberg that he had dizziness and fatigue; specifically, Plaintiff experienced dizziness after about 30 minutes of sitting and on exertion, and also experienced occasional dyspnea when he lifts over 10 pounds. [R. 342]. Dr. Lev-Weissberg attributed Plaintiff's symptoms to his "combination of medications" and "b12 insufficiency and borderline deficiency" among other potential causes. [R. 343]. In December 2017, Dr. Lev-Weissberg explained that Plaintiff was under his care for coronary artery disease, that Plaintiff is taking medications that cause dizziness and fatigue, and that due to his medications and underlying medical conditions, Plaintiff could not do lifting above 10 pounds, must avoid working on heights, and may need to take a break every 3 hours. [R. 639].

The ALJ assigned little weight to Dr. Lev-Weissberg's opinions, citing: (1) an absence of antalgic and abnormal gait findings in Plaintiff's treatment records; (2) the fact that Plaintiff did not report joint pain or myalgia, and that his physical examinations reflected normal sensation, strength, and reflexes in all four extremities; and (3) Plaintiff's October 2015 stress test, which reflected a Class I functional capacity and 13 METs of work. [R. 90.] The ALJ then proceeded to find that Plaintiff could perform "medium work with no concentrated exposure to hazards such as machinery with moving mechanical parts and unprotected heights." [R. 90]. Medium work "involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects

6

weighing up to 25 pounds." 20 C.F.R. § 404.1567. Based on that finding, at step five, the ALJ concluded that there are jobs that exist in significant numbers in the national economy that the Plaintiff could perform (including janitor, dishwasher, and hand packer), and thus found that Plaintiff was not disabled. [R. 91-92].

The ALJ failed to apply the proper legal standard in assigning little weight to Dr. Lev-Weissberg's opinions, however. Even if the ALJ was not obligated to assign Dr. Lev-Weissberg's opinions controlling weight, the ALJ was required to consider the factors identified in 20 C.F.R. §404.1527(c) in determining the weight to accord Dr. Lev-Weissberg's opinions. *Gerstner*, 879 F.3d at 263. The ALJ failed to do so. Although the ALJ noted that she "considered opinion evidence in accordance with the requirements of 20 CFR 404.1527," [R. 88], her discussion of Dr. Lev-Weissberg's opinions belies that rote conclusion. Specifically, the ALJ never identified, let alone discussed, "the length, nature, and extent of" Plaintiff's treatment relationship with Dr. Lev-Weissberg; the "frequency" with which Dr. Lev-Weissberg treated Plaintiff; or Dr. Lev-Weissberg's specialty (internal medicine). See 20 C.F.R. § 404.1527(c) (requiring consideration of these factors). At least some of these factors weigh in favor of affording substantial weight to Dr. Lev-Weissberg's opinions: records indicate that Plaintiff has been a regular and frequent patient of Dr. Lev-Weissberg since 2011, suggesting that Dr. Lev-Weissberg may have a well-founded longitudinal view of Plaintiff's symptoms. *See* R. 348-619; *see also Campbell v. Astrue*, 627 F.3d 299, 308 (7th Cir. 2010) (noting that these factors "may have caused the ALJ to accord greater weight to" treating physician's opinion). The ALJ's failure to adequately consider Dr. Lev-Weissberg's treatment relationship with Plaintiff warrants remand. *Scrogham*, 765 F.3d at 698 (remanding where the ALJ "did not discuss [many § 404.1527(c)] factors in her opinion").

7

Even if it were proper for the ALJ to consider only the "consistency and supportability of" a treating physician's opinion (and it is not), the ALJ in this case failed to build an accurate and "logical bridge," *Beardsley*, 758 F.3d at 837, between the record and her conclusions. In assessing Dr. Lev-Weissberg's opinions, the ALJ relied on consistent findings that Plaintiff had a normal gait, that Plaintiff did not report myalgia or joint pain, and her belief that Plaintiff's 2015 stress test was inconsistent with Dr. Lev-Weissberg's assessment of Plaintiff's functional limitations. The ALJ, however, never explained how or why most of these factors are inconsistent with Dr. Lev-Weissberg's core conclusions. Specifically, Dr. Lev-Weissberg repeatedly noted that the symptoms that caused Plaintiff's functional limitations—including dizziness and fatigue with exertion—were brought about by his medications. The ALJ did not explain why findings of normal gait, a lack of reported joint pain, and full strength in Plaintiff's extremities are inconsistent with Dr. Lev-Weissberg's conclusions that medication-induced dizziness and fatigue substantially limited Plaintiff's functional capacity.[4] *See, e.g., Burgos v. Saul*, 788 F. App'x 1027, 1032 (7th Cir. 2019) (noting ALJ erroneously cited finding that plaintiff had "consistent renal functioning for ten years" in according little weight to treating physician's opinions regarding how plaintiff's kidney disorder affected his hernia pain); *Lucy S. v. Saul*, No. 18-CV-6869, 2020 WL 1275017, at *5 (N.D. Ill. Mar. 17, 2020) (remanding where the "physical examinations cited by the ALJ [were] not inconsistent with" treating physician's opinion). While Plaintiff's October 2015 stress test is arguably inconsistent with Dr. Lev-Weissberg's opinions, the ALJ failed to note in her discussion

---

[4] In discounting Plaintiff's account of his subjective symptoms, the ALJ also cited to Plaintiff's history of normal respiratory and cardiovascular examinations and tests since his 2009 heart attack. The ALJ did not, however, cite these factors in her discussion of Dr. Lev-Weissberg's opinions. Even if she had, the ALJ never explained why normal cardiovascular and respiratory examinations are inconsistent with Dr. Lev-Weissberg's findings that Plaintiff was substantially limited by dizziness and fatigue brought about *by his medications*.

of Dr. Lev-Weissberg that Plaintiff had to stop the stress test after ten minutes and thirty seconds due to fatigue, a fact consistent with Dr. Lev-Weissberg's assessment.[5] *See, e.g., Mayra M. v. Saul*, No. 18 C 8427, 2019 WL 6716612, at *6 (N.D. Ill. Dec. 10, 2019) (remanding where ALJ discounted treating physician's opinion based on records indicating plaintiff got pain relief from injections without weighing fact that relief was only temporary).

In short, in assessing Dr. Lev-Weissberg's opinions, the ALJ did not address most of the factors she was required to consider. And for the sole factor she did consider—the supportability and consistency of Dr. Lev-Weissberg's opinions—the ALJ failed to sufficiently explain how the evidence she relied on was inconsistent with Dr. Lev-Weissberg's opinions. Because the ALJ's decision to accord little weight to Dr. Lev-Weissberg's opinions on its own warrants remand, the Court need not address Plaintiff's other arguments.

## CONCLUSION

For the foregoing reasons, Plaintiff's motion for summary judgment [27] is granted, and the Commissioner's motion for summary judgment [37] is denied. The Commissioner's decision is reversed, and this matter is remanded for further proceedings consistent with this Memorandum Opinion and Order.

**SO ORDERED.**

Dated: 10/7/21

E N T E R :

BETH W. JANTZ
United States Magistrate Judge

---

[5] The ALJ did note this fact earlier in her decision [R. 89], but never explained how or whether she considered it in according weight to Dr. Lev-Weissberg's opinions, even though the stress test formed a significant part of the reason she discounted Dr. Lev-Weissberg's opinions.